THE HONORABLE BARBARA J. ROTHSTEIN

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION — MDL No. 1407

This document relates to: — MDL Docket No. 02-CV-2599

Alicia Quezada v. McKesson Corporation
Case No.: 01-CV-2431 DWF/AJB

**McKesson Corporation's Answers to Plaintiff's Interrogatories**

TO: PLAINTIFF ABOVE-NAMED and JANE E. JOSEPH, ESQ., Her Attorney, Lopez, Hodes, Restaino, Milman & Skikos, 13938A Cedar Road, #373, Cleveland, Ohio, 44118

COMES NOW defendant McKesson Corporation ("M^C^KESSON"), by and through its attorneys of record, hereby makes its Answers to Plaintiff's Interrogatories to Defendant as follows:

M^C^KESSON has not fully completed its investigation of the facts relating to this lawsuit, has not completed its discovery in this lawsuit, and has not completed its preparation for trial. All of the objections contained herein are based only upon such

information which is presently available to and specifically known to MCKESSON. It is anticipated that further discovery and independent investigation may lead to discovery of additional information which might result in different or additional objections and/or responses.

Counsel for MCKESSON have sought to prepare for discovery in this matter involving a product containing Phenylpropanolamine ("PPA") by undertaking efforts to investigate the claims asserted by Plaintiff.

MCKESSON reserves the right to assert additional objections as appropriate and to supplement these Responses and Objections. Furthermore, MCKESSON does not waive or intend to waive, by reason of these Responses and Objections to these Interrogatories, its right to assert additional objections as appropriate and to supplement these Responses and Objections.

These Responses are made solely for the purpose of and in relation to this lawsuit. Except for the facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred. The fact that any Interrogatory herein has been answered should not be taken as an admission of the facts assumed by such Interrogatory. All Responses should be construed as given on the basis of present recollection.

## GENERAL OBJECTIONS

1. MCKESSON objects to the Interrogatories to the extent they call for the disclosure of confidential information or documents protected by the attorney-client, work-product, or other privilege or protection, and will not disclose such information.

2. McKESSON objects to the Interrogatories to the extent they call for disclosure of materials prepared in anticipation of litigation and/or trial preparation material.

3. McKESSON objects to the Interrogatories to the extent they are so vague, overly broad, and unduly burdensome as to render it impossible to respond in any reasonable manner or amount of time.

4. McKESSON objects to the Interrogatories as unduly burdensome and oppressive insofar as they seek information or materials already within Plaintiff's knowledge, possession and/or control.

5. McKESSON objects to the Interrogatories to the extent they purport to require McKESSON to create, locate, or produce documents that are not in its possession, custody or control.

6. McKESSON objects to the Interrogatories as being improper, unduly burdensome, and oppressive to the extent that they request McKESSON to identify all facts, witnesses, persons with knowledge and/or documents relating to the Plaintiff's contentions in this action well prior to the completion of discovery herein.

7. McKESSON objects to the Interrogatories to the extent that they require McKESSON to detail all of the Plaintiff's legal contentions and all supporting facts, on the grounds that such requests are premature at this stage of the litigation and would entail undue burden and expense for McKESSON while discovery progresses. McKESSON reserves the right to amend or supplement these Objections after discovery is concluded in this action.

8. M[C]KESSON objects to the Interrogatories in that the Interrogatories were served one day prior to the close of case-specific fact discovery and thus are not timely.

9. M[C]KESSON objects to the Interrogatories in that the case-specific discovery deadline for this case has now passed, and this deadline as set forth in Case Management Order 6, applies equally to the Plaintiff and Defendant.

10. M[C]KESSON objects to the Interrogatories in that the Interrogatories, including parts and subparts, exceed the ten (10) permitted pursuant to Case Management Order Number 6.

11. M[C]KESSON objects to the Interrogatories to the extent that the Interrogatories attempt to duplicate the Master Discovery Requests set forth in Case Management Order 1, as M[C]KESSON was a distributor of PPA-containing products, and thus was not subject to the Master Discovery Requests.

12. M[C]KESSON objects to the Interrogatories to the extent that the Interrogatories request information from Zee Medical, Inc. as Zee Medical, Inc. is a not a party to the case.

**OBJECTIONS AND ANSWERS TO INTERROGATORIES**

1. State the corporate name of Defendant, any name under which Defendant does business, and the identity and title of all persons who participated in the preparation of these Interrogatory responses, excluding counsel.

**ANSWER:** M[C]KESSON objects to this Interrogatory in that it is so vague and overbroad as to make a complete answer impossible for the answering party. This Interrogatory also seeks information protected by the attorney-client privilege. Subject to and without waiving any objections, M[C]KESSON states that the correct name of the Defendant is M[C]Kesson Corporation. The only name under which M[C]KESSON does business which may be relevant to the subject matter of this litigation is McKesson Drug Company. These Interrogatory Answers

were obtained from a variety of sources within the company, together with the usual and expected assistance from counsel. For purposes of these Interrogatories, the verification will be executed on behalf of the company by Kristina Veaco, Assistant Secretary, McKesson Corporation.

2. State the corporate subsidiaries or related companies in which you hold stock ownership that are responsible for manufacturing PPA products or are in any other way involved in the distribution or sale of PPA products.

**ANSWER:** M^C^KESSON objects to this Interrogatory in that it is so vague and overbroad as to make a complete answer impossible for the answering party. M^C^KESSON objects to the Interrogatory on the basis that it calls for the answering party to make legal conclusions about corporate relationships. M^C^KESSON further objects to this Interrogatory to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Without waiving any objections, M^C^KESSON states that it is not a manufacturer of PPA products, but M^C^KESSON did distribute PPA-containing products in the past as a distributor. The only relevant subsidiary is Zee Medical, Inc. Zee Medical, Inc. also distributed PPA-containing products prior to November, 2000, but has never been a manufacturer of PPA products.

3. Identify the corporate structure and organization of McKesson Corporation, including, but not limited to, providing the names of parent corporations, subsidiaries, affiliated companies, and/or predecessors in interest. This is to include any worldwide offices, subsidiaries or affiliates of McKesson Corporation.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. Subject to and without waiving any objections, M^C^KESSON states that it is a publicly-traded corporation. McKesson was established as McKesson & Olcott in 1833 and became McKesson & Robbins in 1853. McKesson & Robbins, Incorporated merged with Foremost Dairies, Inc. becoming Foremost-McKesson, Inc. Foremost-McKesson became known as McKesson Corporation in 1983. In 1999, McKesson became known as McKesson HBOC, Inc. In 2001, its name was changed back to McKesson Corporation. McKesson has numerous subsidiaries and offices worldwide.

4. State whether Defendant or its subsidiaries, including, but not limited to, Zee Medical, Inc., have at any time formulated PPA products. If so, state:

a. The name of each product;
b. What years it was sold;
c. Identify the individuals involved in formulating the product.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It is also vague and ambiguous. M^C^KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M^C^KESSON answers that it does not, nor has it or any of its subsidiaries at any time formulated PPA products. M^C^KESSON and Zee Medical, Inc. were distributors of PPA products.

5. If your Answer to Interrogatory No. 4 is yes, state the division(s) or operating unit(s) of Defendant and/or its subsidiaries responsible for the following regarding PPA products:

a. Product design;
b. Pre-clinical testing;
c. Clinical testing;
d. Regulatory approval and compliance;
e. Manufacturing;
f. Marketing;
g. Labeling;
h. Promotion; and
i. Distribution.

**ANSWER:** Without waiving any objections, see Answer to Interrogatory No. 4.

6. If your Answer to Interrogatory No. 4 is yes, identify the individual employees of Defendant and/or its manufacturing subsidiaries with supervisory and/or managerial responsibilities for the following regarding PPA products:

a. Product design;
b. Pre-clinical testing;
c. Clinical testing;
d. Regulatory approval and compliance;
e. Manufacturing;
f. Marketing;
g. Labeling;
h. Promotion; and
i. Distribution.

**ANSWER:** Without waiving any objections, see Answer to Interrogatory No. 4.

7. Identify each PPA product you distribute and for each such product, identify the individuals with supervisory and/or managerial responsibilities for:

a. Monitoring adverse reactions;
b. Monitoring the medical literature regarding PPA safety issues;
c. Determining whether the labeling for the product needed to be changed and, if so, implementing any labeling change;
d. Determining whether PPA should be removed from the product and, if so, implementing any reformulation of the product;
e. Interacting or communicating with the Consumer Healthcare Products Association ("CHPA") or the Nonprescription Drug Manufacturer's Association ("NDMA") regarding the safety of PPA;
f. Interacting or communicating with manufacturers, suppliers, and/or distributors of PPA products regarding the safety of PPA;
g. Interacting or communicating with the FDA regarding the safety and/or regulation of PPA;
h. Interacting or communicating with any other State, Federal or Foreign regulatory agency regarding the safety and/or regulation of PPA;
i. Contracting with any other person or entity to perform any testing in humans or animals regarding the safety of PPA;
j. Communicating or interacting with any person or entity that conducted studies regarding the safety of PPA; and
k. Communicating with other corporate entities in the chain of manufacture, sale, and distribution of your PPA products regarding labeling and safety of PPA products.

**ANSWER:** McKESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. McKESSON

objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M^C^KESSON states that any communications regarding the labeling and safety of PPA products would have been forwarded to its supplier, specifically, in the case of the medicine which Plaintiff allegedly ingested, by L. Perrigo Company.

8. Ranging from the Chief Executive Officer to the most junior managerial level of your company, identify and describe the chain of command since 1990 for insuring that the labeling of PPA products adequately warned consumers of the risks of PPA products.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M^C^KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M^C^KESSON states that all labeling of the PPA products it distributed was prepared by its supplier, specifically, in the case of the medicine which Plaintiff allegedly ingested, by L. Perrigo Company.

9. Ranging from the Chief Executive Officer to the most junior managerial level of your company, identify and describe the chain of command since 1990 for making the decision as to whether PPA should be removed from any of the products you distributed for safety reasons.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M^C^KESSON objects to this request to the extent it seeks information regarding products other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M^C^KESSON states that any decisions as to whether PPA should be removed from any of the products distributed by M^C^KESSON would have been made by its supplier, L. Perrigo Company.

10. Identify each over-the-counter consumer product containing PPA marketed or distributed by your company, and for each product state:

a. The dollar amount spent on all advertising for each such product in each of the years since 1990;
b. The dollar sales of each such product in each of the years since 1990;
c. The gross profit derived from the sales of each such product in each of the years since 1990; and
d. The net profit derived from the sales of each such product in each of the years since 1990.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. The request also seeks information that is equally available to the Plaintiff. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding products other than the specific medicine containing PPA which Plaintiff allegedly ingested. The only product relevant to this litigation is Valu-Tapp, a sales history for which is only available for the past 24 months.

11. State whether any of the PPA products you distributed were reformulated or whether you requested reformulation of any of the PPA products you distributed such that PPA was removed as an ingredient from your products and, if so, state:

a. The ingredient which was used to replace PPA; and
b. The cost of reformulating the product without PPA.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that any formulation decisions were made by its supplier, L. Perrigo Company. When L. Perrigo Company made the decision to reformulate the product, Pseudophedrine replaced PPA.

12. State whether at any time between January 1, 1990 and January 1, 2000 you considered or discussed removing PPA from any of the PPA products you distributed and, if so, identify:

a. Any individuals who recommended removing PPA from any of your products;
b. Any individuals who made the decision to remove or not remove PPA from any of your products; and
c. Any documents relating or referring to any proposed removal of PPA from any of your products.

**ANSWER:** McKESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. McKESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, McKESSON states that as a distributor, any discussion of removing PPA from any of the PPA products it distributed would have been made by its supplier, L. Perrigo Company.

13. State whether at any time between January 1, 1990 and January 1, 2000 you analyzed whether the removal of PPA from any of the products you distributed would impact your market share, dollar sales or the cost of production for such product and, if so:

a. Identify the individuals who performed such analyses;
b. Identify the individuals who were informed of the results of such analyses; and
c. Identify any documents relating or referring to such analyses.

**ANSWER:** McKESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. McKESSON objects to this request to the extent it seeks information regarding products other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, McKESSON states that it never analyzed whether to remove PPA from any of the products it distributed.

14. As to any government investigation, regulatory action, indictment, information, or criminal charge which has ever been made or brought against Defendant or its subsidiaries in regard to the promotion, marketing, sale or distribution of any of its drug products, state:

a. The product involved;
b. The court, agency and jurisdiction involved;
c. The filing date;
d. The time period at issue;
e. The current status or disposition of the investigation, regulatory action or criminal charge; and
f. Any claim, file, court number, or other identifying information regarding the investigation, regulatory action or charge.

**<u>ANSWER</u>:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding products other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that there is no such investigation relevant to this litigation.

15. State whether any of the PPA products you distributed were marketed outside of the United States. If so, state:

a. The location(s) outside of the United States where each was marketed;
b. The period of time when the PPA products you distributed were marketed, sold and/or distributed in each such location outside of the United States;
c. The indications, contraindications and risks reflected in the labeling which accompanied your PPA products when they were marketed in each such location outside of the United States (in English);
d. Whether any foreign government regulatory authority took any action to prohibit or limit the manufacture, sale, distribution or use of the PPA products you distributed, identifying the agency involved and the action taken; and
e. Whether any foreign government regulatory authority requested you or any other distributor of PPA products to withdraw such products from the market or restrict their use.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that it did not distribute PPA products outside the United States.

16. With respect to any case of hemorrhagic stroke in any person using any of the PPA products you distributed:

a. State the date on which you first became aware that any consumer using any of the PPA products you distributed suffered a hemorrhagic stroke after using your product;
b. State the total number of reports of hemorrhagic stroke reported in consumers using the PPA products you distributed;
c. Identify each person who furnished and/or received such information;
d. State whether each report of such information was provided to the FDA and, if so, when; and
e. Identify all documents relating, referring to or embodying such information and/or its reporting to the FDA.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that it was not aware of any cases of hemorrhagic stroke in any person using any of the PPA products it distributed prior to the initiation of the **In Re: Phenylpropanolamine (PPA)** litigation.

17. Identify all documents in your possession, custody or control that relate, refer to or embody any studies, tests, analyses or research, including any interim or preliminary reports or data from such studies, conducted by any person or entity regarding hemorrhagic stroke in consumers using any PPA product.

**ANSWER:** M$^{C}$KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M$^{C}$KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M$^{C}$KESSON states that it does not possess any studies, tests, analyses or research on hemorrhagic stroke in consumers using PPA products, as M$^{C}$KESSON, as a distributor, never conducted any studies, tests, analyses or research with regard to hemorrhagic stroke in consumers using PPA products.

18. State the total amount of insurance which you believe may be available to satisfy any claims which have been made in the past and which may be made in the future against you, your predecessors, successors, and assigns as a result of the use of PPA products. This requires, without limitation, that you:

a. Identify each and every general liability, comprehensive general liability, advertising liability or product liability policy (and every other policy which you believe may provide coverage to any personal injury claim asserted in this litigation) that you purchased or on which you are a named insured (including policies purchased by related corporate entities), including all excess layers and/or umbrella policies, for a minimum of the years 1990 through 2000, or for any additional years in which you distributed PPA products, including the policy number, name and address of the insurer who issued the insurance policy, and indicate any self-insured retention.

b. State the type of coverage provided by each such policy (e.g., claims made, occurrence based, etc.);

c. State the limits of liability per claim and in the aggregate for each such policy;

d. State the effective dates of each such policy;

e. State whether each such policy is consuming (e.g., whether payments of counsel fees and defense costs consume the available limits of liability);

f. State the amounts which have been paid under each such policy and the extent to which such payments have exhausted the aggregate limits of coverage provided by each such policy;

g. State the name of your risk manager or person most knowledgeable about your insurance coverage for the years 1990 through 2000;

h. State the name, address and telephone number of your insurance broker(s) for the years 1990 through 2000 for the insurance identified in response to sub-part (a) above;

i. State whether or not you have tendered any claims or provided notice in this litigation to any insurer or any insurance policy other than those identified in sub-part (a) above. If so, include the name and address of the insurer and the policy number and, if the policy is issued to anyone other than yourself, the insured under the policy; and

j. State whether any carrier has notified you or any reservation of rights and, if so, identify all documents relating thereto.

**<u>ANSWER</u>:** M$^{C}$KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. Subject to and without waiving any objection, M$^{C}$KESSON states that from July 1, 1999 to July 1, 2000, M$^{C}$KESSON had a primary comprehensive general liability policy of $5,000,000 through Golden State Insurance Company, and a first layer umbrella policy with a per occurrence limit of $20,000,000 through AIU Insurance Company. <u>See</u> documents produced in response to Plaintiff's Document Requests.

19. State the full corporate name and principal address of each entity with whom you are affiliated through common ownership and control. With respect to each such entity, describe its past and present role in connection with the design, testing, manufacture, marketing, sale and/or distribution of PPA products.

**<u>ANSWER</u>:** M$^{C}$KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M$^{C}$KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M$^{C}$KESSON states that it has numerous subsidiaries, only one of which, Zee Medical, Inc., that distributes PPA products.

20. Describe your document retention/destruction policies and procedures from 1985 through the present including:

a. What documents (including computer files) are routinely discarded and when; and

b. How and where you file safety related documents.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, M[C]KESSON states that it does not have any such policy.

21. Identify and describe all indemnity agreements, agreements to assume liability, agreements to assume the defense, or any other such agreements between you, your insurer and any other person regarding any claims pertaining to the manufacture and distribution of any of the PPA products you distribute.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. M[C]KESSON objects to this request to the extent it seeks information regarding "PPA products" other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that in PPA litigations in which it is a named Defendant, M[C]KESSON has sought indemnity from the manufacturer(s) of PPA products it distributed. M[C]KESSON will not disclose the details of said Indemnity Agreement.

22. Provide the following information about your company:

a. The address of your principal place of business;
b. The identity, by name and title, of your current corporate officers;
c. The identity of your current Board of Directors;
d. State whether your company is owned in material part (50% or greater) by any other persons or entities and, if so, identify the owners and their ownership interests;
e. Briefly describe your involvement with any other corporation involved in the manufacture and distribution of PPA products; and
f. Provide the most current financial data available regarding your company's:

i. Gross sales;
ii. Net income;
iii. Total assets;
iv. Cash;
v. Current assets;
vi. Current liabilities;

vii. Equity;
viii. Long-term debt; and
ix. Short term debt.

g. Identify the individual most knowledgeable regarding your financial status; and
h. Identify the individual most knowledgeable regarding your insurance coverage.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. The request seeks information that is equally available to the Plaintiff. It is also vague and ambiguous. Subject to and without waiving any objections, M^C^KESSON refers the Plaintiff to its 1999 Annual Report and Securities and Exchange Commission Edgar Filings. M^C^KESSON principal place of business is One Post Street, San Francisco, California 94104. As to subpart (g): Jeff Campbell, CFO. As to subpart (h): Kevin Jones, Risk Manager. See documents produced in response to Plaintiff's Document Requests and www.mckesson.com.

23. Please state the number of lawsuits presently pending against you and/or any of your subsidiaries involving any of the PPA products you distributed. For each such lawsuit, please provide the following information:

a. The place of jurisdiction, case number and complete caption; and
b. The name, firm name, address and telephone number of the lawyer(s) who have filed the case on behalf of each plaintiff.

**ANSWER:** M^C^KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome and to the extent that this request calls for information pertaining to the distribution of brand-name products. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. The request seeks information that is equally available to the Plaintiff. Subject to and without waiving any objections, M^C^KESSON lists the following lawsuits:

**Tso, Karen v. McKesson Corporation**, Maricopa County, Arizona Superior Court, Case No. CV2003-005781. Counsel for plaintiff, Burt Rosenblatt, Ely, Bettini, Ulman & Rosenblatt,

3200 North Central Avenue, Suite 1930, Phoenix, Arizona, 85012, (602) 230-2144.

**Napolitan, Joseph and Charlene v. Zee Medical, Inc., et al.,** Philadelphia County Court of Common Pleas, **In Re: Phenylpropanolamine Litigation**, Master Docket Number, September 2001 Term, No. 0001 (dismissed; to be refiled in New York State Court). Counsel for plaintiffs, Lee B. Balefsky, Heather Neulight, Greitzer and Locks, 1500 Walnut Street, 20th Floor, Philadelphia, Philadelphia, 19102, (215) 893-0100.

**Arndt, Gary, et al. v. Zee Medical Inc., et al.,** Superior Court of Los Angeles County, JCCP No. 4166 Case No. 01CC00236. Counsel for plaintiffs, Ramon Rossi Lopez, Steven J. Skikos, Lopez, Hodes, Restraino, et al., 625 Market Street, 15th Floor, San Francisco, California, 94105, (415) 956-5257.

**Clark, Jannie, et al. v. Wyeth, et al.,** USDC, Southern District of Mississippi, Civil Action No. 5:03CV270BrS, transferred to MDL for handling. Counsel for plaintiffs, Kenneth W. Smith, Miller & Associates, 809 Cameron Street, Alexandria, Virginia, 22314, (703) 519-8080.

**Goodman, Jeanne v. Zee Medical, Inc., et al.,** St. Louis, Missouri Circuit Court, Cause No. 032-09577. Counsel for plaintiffs, Mark I. Bronson, Newman Bronson & Wallis, 2300 West Portal Plaza Drive, St Louis, Missouri, 63146, (314) 878-8200.

**Law, Florene, et al. v. Zee Medical, Inc.,** USDC, Northern District of Oklahoma, Case No. 02CV 503C, transferred to MDL for handling. Counsel for plaintiffs, Mark W. Schilling, Riggs, Abney, Neal, Turpen, et al., 502 West Sixth Street, Tulsa, Oklahoma, 74119, (918) 587-3161.

**McIntosh, Gayle v. Zee Medical Inc., et al.,** USDC District of Nevada, Case No. CV-N-02-642-DWH-RAM, transferred to MDL for handling. Counsel for plaintiffs, J. Stewart White, Law Offices of White & Meany, 3185 Lakeside Drive, Reno, Nevada, 89509, (775) 828-9999.

24. Please state the number of lawsuits that have been settled or dismissed against you and/or any of your subsidiaries involving any of the PPA products you distributed. For each such lawsuit, please give the following information:

a. The place of jurisdiction, case number and complete caption; and
b. The name, firm name, address and telephone number of the lawyer(s) who have filed the case on behalf of each plaintiff; and
c. The date on which the lawsuit was settled.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome and to the extent that this request calls for information pertaining to the distribution of brand-name products. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. The request seeks information that is equally available to the Plaintiff.

25. State whether between 1990 – 2000 your company had any written codes of conduct or ethical standards regarding the marketing, distribution and/or labeling of drug products and, if so:

a. Identify any documents that relate, refer to or embody such codes of conduct or ethical standards;
b. State whether your company had any department or office that was charged with the responsibility for determining whether your company complied with such codes of conduct or ethical standards; and
c. Identify any officers and/or employees with managerial or supervisor responsibility for determining whether the corporation's conduct was in compliance with such codes of conduct or ethical standards.

**ANSWER:** M[C]KESSON objects to the extent that the scope of this Interrogatory is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. M[C]KESSON objects to this request to the extent it seeks information regarding products other than the specific medicine containing PPA which Plaintiff allegedly ingested. Subject to and without waiving any objections, M[C]KESSON states that it does not have any such written code of conduct or ethical standards with regard to its distribution of drug products.

26. State whether between 1990 – 2000 your company belonged to any trade associations or other groups that had codes of conduct or ethical standards regarding the marketing, distribution and labeling of drug products and, if so:

a. Identify any documents that relate, refer to or embody such codes of conduct or ethical standards;
b. State whether your company had any department or office that was charged with the responsibility for determining whether your company complied with such codes of conduct or ethical standards; and
c. Identify any officers and/or employees with managerial or supervisory responsibility for determining whether the corporation's conduct was in compliance with such codes of conduct or ethical standards.

**ANSWER:** McKESSON objects to the extent that the scope of this request is overly broad, harassing and unduly burdensome. It seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. It is also vague and ambiguous. McKESSON objects to this request to the extent it seeks information regarding products other than the specific medicine which plaintiff allegedly ingested. Subject to and without waiving any objections, McKESSON states that it does not belong to any such trade association or group.

AS TO CONTENT:

McKESSON CORPORATION

By________________________________
Its________________________________

SUBSCRIBED and SWORN to before me
this ___ day of _________________, 2004.

_________________________________
Notary Public

AS TO CONTENT/OBJECTIONS:

O'NEILL & MURPHY, LLP

Dated: 3/1/04

By s/Patrick H. O'Neill, Jr.
Patrick H. O'Neill, Jr. (#207950)
Cara C. Passaro (#0312587)
1050 Degree of Honor Building
325 Cedar Street
Saint Paul, MN 55101-1015
(651) 292-8100

**Attorneys for Defendant**