THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | **MDL: 1407** |
| This document relates to:<br><br>Quezada v. McKesson Corporation<br><br>Case No. 2:02-cv-02599 | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER** |

**INTRODUCTION**

Defendant's Motion to Quash plaintiff's Rule 30(b)(6) Notice of Taking Deposition Duces Tecum is the latest in a long line of efforts by McKesson to avoid discovery. That defendant's motion is based in part on allegations that plaintiff failed to prosecute this case in a timely fashion speaks volumes about an approach that can only be summarized as 'throw it against the wall and see what sticks.' The record demonstrates that plaintiff has deliberated with great effort and speed to work with two sets of defense attorneys to obtain discovery. Defendant misled, misrepresented

**LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS**
**13938A Cedar Rd., Suite 373**
**Cleveland, Ohio 44118**
**(216) 921-9314 Telephone**
**(216) 921-9334 Facsimile**

and misapplied the rules to avoid all but the minimum of disclosure in this matter. It is time for defendant to finally submit to the rules of court and comply with its discovery obligations.

## ARGUMENT

### I. Defendant's Claim That Plaintiff's Deposition Notice is Untimely Is Without Merit

In its Memorandum in Support of Motion to Quash and Motion for Protective Order, and its Response to Plaintiff's Response to the Court's Order to Show Cause, defendant claims that additional discovery of the defendant is time-barred as of the expiration of the Fact Discovery Deadline, or January 22, 2004. *(See Memorandum In Support of Motion at p. 1 and Defendant's Response at p. 1).* That argument is contrary to the plain language of the case management orders and is unsupported by the facts.

For a period of six months, between June 2003 and November 24, 2003, defense counsel represented that McKesson had answered the MDL Master Discovery Requests and would provide a copy of its discovery responses to plaintiff. *(See Exhibit A, Collection of Correspondence Between Counsel Relating to Discovery).* Plaintiff relied on those representations and did not press for additional discovery. On November 24, 2003, defendant's new counsel finally disclosed that it had not and would not respond to the Master Discovery Requests. After giving defendant the option of stipulating to remand this case to Minnesota so that discovery against this sole defendant could proceed outside the MDL, plaintiff served on defendant a customized set of discovery requests, to which defendant responded on March 1, 2004 and supplemented its response on May 17, 2004.

Of note is that defendant did *not* claim in November, 2003 that its discovery obligations ended with the expiration of the Fact Discovery Deadline on January 22, 2004. Defendant did not

**LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS**
**13938A Cedar Rd., Suite 373**
**Cleveland, Ohio 44118**
**(216) 921-9314 Telephone**
**(216) 921-9334 Facsimile**

take that position because it knew it would appear as if it had intentionally misled plaintiff until it was too late to serve any discovery at all. Indeed, plaintiff would have been required to serve interrogatories, document requests, review documents and depose corporate employees in less than two months. Furthermore, defendant could have but did not refuse to answer plaintiff's discovery requests on the basis that they were not timely served.

In any event, the court issued its Order to Show Cause Why This Matter Should Not Be Remanded soon after defendant supplemented its response to plaintiff's discovery request, thus providing defendant with yet another justification for delay.

Defendant's contention that plaintiff's right to conduct generic discovery of McKesson ended on January 22, 2004 is a misapplication of Case Management Order No. 6, Case Specific Fact Discovery Procedures and Plan. That Order plainly applies to discovery specific to an individual plaintiff such as the Plaintiff's Fact Sheet and case-specific discovery requests. Case Management Order No. 6 does not provide for fact discovery of a defendant. That discovery falls under the purview of Case Management Order No. 1. Defendant has failed to present compelling evidence that plaintiff has not met the requirements of CMO No. 1, particularly since McKesson has never submitted to any substantive discovery in the MDL.

Indeed, Final MDL Pretrial Order of October 15, 2004 summarizes the various case management orders relating to discovery and demonstrates that plaintiff's discovery requests unequivocally fall within the purview of CMO 1:

> <u>CMO 1</u>: established a protocol for generic fact discovery (governing, *inter alia*, written discovery, document production and depositions of defendants' corporate representatives and employees);

* * * * *

**LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS**
**13938A Cedar Rd., Suite 373**
**Cleveland, Ohio 44118**
**(216) 921-9314 Telephone**
**(216) 921-9334 Facsimile**

CMO 6: established a protocol for case-specific fact discovery (governing, *inter alia*, written discovery (including a Fact Sheet and records authorizations, document production and depositions of plaintiffs' case-specific fact witnesses). *(See Exhibit B, Final MDL Pretrial Order).*

The deadline for case-specific discovery, not fact discovery of a defendant is "within 12 months of the docket date." Defendant McKesson misunderstands the application of that deadline, despite extensive briefing and letters on the subject.

Furthermore, it is the height of self-maneuvering that McKesson argues that plaintiff sat on her rights by failing to notice corporate depositions before now. McKesson goes so far as to admonish plaintiff that the "30(b)(6) Notice is a discovery device that has been available to the Plaintiff since this case was filed in 2001." *(See Exhibit C, Correspondence of Patrick H. O'Neill, dated September 23, 2004).* Plaintiff has acted with due speed at every stage of this case. Her only impediment has been McKesson's selective use of the rules of discovery and case management orders to thwart discovery.

## II. Discovery of McKesson is Appropriate and Will Lead to the Discovery of Admissible Evidence

Defendant cites two decisions of this court regarding discovery of non-manufacturing defendants as a basis for its Motion to Quash and Motion for a Protective Order. Both decisions are wholly inapposite to the facts in *Quezada*.

In its Order Denying Plaintiffs' Motion to Compel Responses to Plaintiffs' Master First Set of Discovery and Request for Production of Documents from Walgreen Company and Rite Aid Corporation, dated December 3, 2003, the issue before the court was only whether retailer defendants must respond to the Master Discovery Requests. Plaintiffs in that case argued that Walgreen Company and Rite Aid Corporation are manufacturers under the Louisiana Product

Liability Act and should therefore be required to respond. The court denied the motion on the grounds that plaintiffs failed to make a showing that defendants are manufacturers and as such, upheld its prior ruling that retailer defendants are not subject to the Master Discovery Requests.

In *Quezada*, the Master Discovery Requests are not at issue and plaintiff does not contend that McKesson is a PPA manufacturer. McKesson's liability emanates, among other things, from Minn. Stat. § 544.41, the Seller's Exception Statute, which precludes dismissal of a product seller that has played an active role in creating the product defect or had actual knowledge of the defect. In re Shigellosis Litigation v. Sunridge Farms, Inc., 647 N.W.2d 1 (Minn. Ct. App. 2002).

Discovery undertaken of McKesson's subsidiary, Zee Medical, a PPA manufacturer, suggests that McKesson had significant involvement in activities unlike other PPA retailers by reviewing and drafting product labeling and participating in regulatory affairs matters.

Kevin Lloyd, an employee of Zee Medical, was questioned in another PPA case as to how he would go about obtaining information to include on labels and warnings:

A: *Early on for approximately the first four or five years, as I mentioned, I did not have a lot of prior experience in labeling of OTC drug products. So I relied very heavily on both Steve Egelhoff's experience and the McKesson law department. McKesson is our parent company.*

Q: *Tell me how you would go about obtaining the information to include on labels and warnings.*

A: *Again, early on I primarily relied on the current label copy, and then I also relied on review by Steve Egelhoff and by McKesson law department. (See Exhibit D, Lloyd Depo. Tr. at 35:9-11).*

**LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS**
**13938A Cedar Rd., Suite 373**
**Cleveland, Ohio 44118**
**(216) 921-9314 Telephone**
**(216) 921-9334 Facsimile**

McKesson was intimately involved and familiar with product labeling issues, unlike other retailers and distributors. As for regulatory affairs matters, Mr. Lloyd recalls that communications were issued from the McKesson Regulatory Affairs Task Force providing information on PPA concerning DEA regulations:

> A: *They would be in the form of an informational sheet that was prepared by, I believe, the national Druggists Wholesale Association in which they would update various issues having to do with prescription drugs, other issues, and at times DEA regulations concerning List 1 chemicals. (See Exhibit D, Lloyd Depo. Tr. at 55:3-8).*

Mr. Lloyd testified that two meetings were held of the McKesson Regulatory Affairs Task Force and both meetings occurred in 2000, a critical year in the life of the Yale Study. Plaintiff is entitled to discover which individuals from McKesson attended those meetings and whether PPA was discussed. McKesson, under the circumstances, bears no similarity to the retailers Walgreen and Rite Aid.

Likewise, defendant's reliance on the court's Order Granting Defendant Cardinal Health's Request to Quash and motion for Protective Order in *Sanders v. American Home Products Corporation, et al,* is misplaced. In *Sanders,* the court granted defendant's motion to quash plaintiff's subpoena duces tecum and notice of taking deposition duces tecum of defendant on the grounds that the discovery request was untimely. The court also noted in a footnote that Cardinal Health had not manufactured the product and no compelling reason had been presented why defendant should have to respond to plaintiff's discovery request.

That case is distinguishable from *Quezada.* In *Sanders,* extensive discovery of the manufacturing defendant had already been completed in the MDL and the manufacturing

defendant was a named party in that case. The court found no compelling reason to order a seller-defendant to respond to plaintiff's discovery request without evidence that such discovery was relevant and necessary. In *Quezada,* there has been no MDL discovery of the single named defendant. Moreover, plaintiff has established the need for deposition discovery of McKesson based on Minnesota law and the particular factual circumstances of McKesson's involvement in drug labeling and regulatory affairs matters. McKesson has never denied, in any of its briefs regarding remand or discovery, allegations of its involvement in labeling and regulatory matters. Plaintiff's discovery is both necessary and relevant.

## CONCLUSION

*Quezada* presents a unique fact pattern unlike the two cases cited by defendant. Delays caused by defendant's conduct combined with McKesson's atypical role in this litigation compels that deposition discovery of McKesson be permitted before this case is remanded to Minnesota. Plaintiff therefore respectfully requests that the court deny defendant's Motion To Quash and Motion for a Protective Order.

Respectfully submitted this ___19th____ day of October, 2004.

___s/ Jane E. Joseph_______________
Jane E. Joseph (MN Atty. No. 167988)
LOPEZ, HODES, RESTAINO,
MILMAN & SKIKO
13938A Cedar Rd., Suite 373
Cleveland, Ohio 44118
(216) 921-9314
(216) 921-9334 (fax)

**THE HONORABLE BARBARA J. ROTHSTEIN**

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

**IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION**

**MDL NO. 1407**

**CERTIFICATE OF SERVICE**

This document relates to:
Quezada v. McKesson Corporation
Case No. 2:02-cv-02599

I, Audrey Schmida, declare under penalty of perjury under the laws of the State of Ohio that the following is true and correct.

I am a citizen of the United States and a resident of Summit County, Ohio. I am over the age of 18 years and am not a party to the within cause. My business mailing address is that of Lopez, Hodes, Restaino, Milman & Skikos, 13938A Cedar Rd., Suite 373, Cleveland, Ohio 44118.

On October 18, 2004 I caused true and correct copies of :

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO QUASH FOR PROTECTIVE ORDER

DECLARATION OF JANE E. JOSEPH

to be served by electronic and regular U.S. mail upon the following counsel of record:

Patrick H. O'Neill, Jr.
O'Neill & Murphy, LLP
1050 Degree of Honor Building
325 Cedar Street
St. Paul, Minnesota 55101
**Defendants Counsel**

and to be served via electronic mail upon the following counsel of record:

Lance Palmer, Esq.
LEVINSON FRIEDMAN, P.S.
720 3rd Avenue, Suite 1800
Pacific Building
Seattle, Washington 98104
**Plaintiffs' Liaison Counsel**

Joseph Hurson, Esq.
LANE, POWELL, SPEARS & LUBERSKY, LLP
1420 5th Avenue, Suite 4100
Seattle, Washington 98101
**Defendants' Liaison Counsel**

Douglas A. Hofmann, Esq.
WILLIAMS, KASTNER & GIBBS PLLC
P. O. Box 21926
Seattle, Washington 98111-3926
**Defendants' Liaison Counsel**

s/Audrey Schmida
Audrey Schmida