THE HONORABLE BARBARA J. ROTHSTEIN

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY LITIGATION

MDL No. 1407

This document relates to:

Alicia Quezada v. McKesson Corporation
Case No.: 01-CV-2431 DWF/AJB

**Defendant's Reply Memorandum in Support of Motion to Quash and Motion for Protective Order**

## INTRODUCTION

The time to conduct case-specific fact discovery in this case expired on January 22, 2004. Therefore, the Deposition Notice served on September 15, 2004 is untimely. McKesson respectfully requests that the Court remain consistent in enforcing its Case Management Orders, and enjoin Plaintiff from pursuing the proposed discovery of McKesson as untimely. In addition, the deposition should be quashed since McKesson is a non-manufacturer, which entitles it to further protection from the Court.

## I. PLAINTIFF'S SERVICE OF THE DEPOSITION NOTICE DUCES TECUM IS IN VIOLATION OF THE DISCOVERY DEADLINE ESTABLISHED BY THE COURT

The MDL Court's primary function is to determine the scope of discovery, including establishment of deadlines and determinations as to relevance.

Whether a party was diligent in attempting to comply with the CMO deadlines is central to the inquiry as to whether good cause exists for any requested modification. See ***FMC Corp. v. Vendo Co.***, 196 F. Supp. 2d 1023, 1030 (E.D. Cal. 2002) (noting that where party was not diligent in complying with court, no inquiry into modification of that order is warranted). While Plaintiff contends that McKesson's position is an attempt to avoid discovery, McKesson has made every effort to comply with Plaintiff's discovery requests in accord with the Court Orders regarding non-manufacturers.

Regardless of what transpired with prior counsel, the Plaintiff knew it only sued a non-manufacturer since the inception of the case, December 28, 2001, and formally knew on November 24, 2003 that McKesson would not be producing any documents in the MDL. Instead of acting timely, the Plaintiff waited until one day before the FDD expired to serve MDL discovery, and waited nine months after the FDD expired to note it's first deposition. The simple fact is the Plaintiff did not serve the Notice within the time period prescribed by the Court, and the Motion to Quash should therefore be granted.

The Plaintiff has never moved the Court for an extension of the FDD, or for an Order pursuant to CMO 1(a) demonstrating why she should be granted leave to depose McKesson's representatives after expiration of the FDD. Moreover, in early January 2004

Plaintiff refused McKesson's offer to stipulate to an extension of the discovery deadline. As to the Plaintiff's waiver argument, McKesson did object to the Interrogatories on the basis of timeliness as follows:

> McKesson objects to the Interrogatories in that the Interrogatories were served one day prior to the close of case-specific fact discovery and thus are not timely. McKesson objects to the Interrogatories in that the case-specific discovery deadline for this case has now passed, and this deadline as set forth in Case Management Order 6, applies equally to the Plaintiff and Defendant.

The Motion to Quash should be granted since the Plaintiff did not timely serve the Deposition Notice.

## II. THE MOTION TO QUASH SHOULD ALSO BE GRANTED SINCE DISCOVERY OF McKESSON IS CONTRARY TO THE COURT'S ORDERS REGARDING NON-MANUFACTURING DEFENDANTS, AND IS NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Plaintiff concedes that McKesson is not a manufacturer of PPA products: "Plaintiff does not contend that McKesson is a PPA manufacturer." **(See Plaintiff's Brief at p. 5.)** Yet McKesson is the sole defendant in the instant case. The Plaintiff did not name the product's supplier, L. Perrigo Company ("Perrigo"), or the product's manufacturer, Copley Pharmaceutical, Inc., now known as Teva Pharmaceuticals USA, Inc. ("Copley/Teva"), because the statute of limitations for products liability actions ran in her state of residence, Utah, by one month.[1] After it was sued, McKesson identified the manufacturer of the

---

[1]The Plaintiff's law firm had been retained well prior to the statute of limitations running in Utah. **(See deposition excerpts reflecting that Plaintiff contacted an attorney in October 2000, and Authorization/Release of Information dated June 13, 2001 attached hereto as Exhibits A and B respectively.)**

product at issue on May 15, 2003, and stipulated to an amendment of the Complaint to name the manufacturer. The Plaintiff refused to add the manufacturer, under the auspices that a Minnesota court lacked jurisdiction. **(See Jane E. Joseph correspondence January 25, 2004 attached hereto as Exhibit C.)**

The Plaintiff's attempts to confuse the Court by referring to Zee Medical, Inc. should be rejected. Zee Medical, Inc. is a wholly owned subsidiary of McKesson, and played no role in McKesson's private label program. **(See Declaration of John Essig.)**

It is undisputed that McKesson did not manufacture, nor did it have any control over the manufacture and/or formulation of any PPA-containing products that it distributed. **(See Declaration of John Essig.)** As stated by the Director of McKesson's private label program, McKesson is similar to large retailers, such as Walgreens or Walmart, and although McKesson does distribute private label products to its retail customers, the manufacturers of these products contractually agree to be responsible for providing all label directions, warnings, cautions and other information as required by law, including any FDA regulations. McKesson has no role whatsoever in the choice of language used to convey these directions, warnings, cautions and other required information. **(See Declaration of John Essig.)** Therefore, Plaintiff's contention that McKesson was intimately involved and familiar with product labeling and regulatory matters relating to PPA is baseless.

McKesson bears every similarity to retailers such as Walgreens and Rite-Aid, and distributors such as Cardinal Health. This Court has limited the discovery allowed against

these non-manufacturers, and should not deviate from its prior rulings, especially where, as here, the Plaintiff has failed to adduce any evidence that the requested discovery, albeit untimely, is relevant and necessary. **(See Order Denying Plaintiffs' Motion to Compel Responses to Plaintiffs' Master First Set of Discovery and Request for Production of Documents from Walgreen Company and Rite-Aid Corporation dated December 3, 2003, and Order Granting Defendant Cardinal Health's Request to Quash and Motion for Protective Order attached as Exhibits B and C, respectively, to Defendant's Memorandum in Support of Motion to Quash and Motion for Protective Order.)**

## CONCLUSION

For the reasons set forth above, McKesson respectfully requests that this Court enter an Order quashing the Notice of Taking Deposition Duces Tecum of McKesson pursuant to Federal Rule of Civil Procedure 30(b)(6) and the Subpoena Duces Tecum, and for a Protective Order.

Respectfully submitted,

O'NEILL & MURPHY, LLP

Dated: 10/28/04

By s/Stephen M. Warner
Patrick H. O'Neill, Jr. (#207950)
Stephen M. Warner (#271275)
1050 Degree of Honor Building
325 Cedar Street
Saint Paul, MN 55101-1015
(651) 292-8100

**Attorneys for Defendant**