November of 1999, did you ever file a claim for Social Security disability benefits?

A. No.

Q. Why did you wait until March 2002 to file a claim for disability benefits?

14:58:48

A. Because I didn't know -- I couldn't do this because I never do that before.

Q. Are there any out-of-pocket money damages that you believe you're going to have to pay, as a result of your stroke, going into the future?

14:59:44

A. I don't know.

Q. When did you decide to bring this lawsuit?

A. When I -- I see this -- in the television they say about the problem, and I have an article in the newspaper.

15:00:37

Q. So you read an article in the newspaper and you saw something on TV?

A. Yeah.

Q. Do you know when approximately that was?

15:00:52

A. I think it was in 2000.

Q. And let's break those down. Do you recall -- what did you see on TV?

A. They say about the medicine that cause PPA, and the symptom, and it was related with my problem.

15:01:17

**EXHIBIT A**

Q. So what did you do after you saw that on TV?
A. I decide I call the lawyer.
Q. Did you call the lawyer that was on the screen?
15:01:30
A. No.
Q. Who did you call?
A. I call a lawyer in -- in Los Angeles, and they call her (indicating).
15:01:45
Q. Okay. The newspaper article that you read, what do you recall about reading about that?
A. About the problem with the medicine. All the problems that people have, it was like mine, about the PPA gave those symptoms.
15:02:11
Q. Okay. Do you know why your lawsuit was brought in Minnesota?
A. No.
Q. Have you ever been to Minnesota?
A. No.
15:02:25
Q. Are any of your doctors in Minnesota?
A. No.
Q. Do you have any friends in Minnesota?
A. No.
Q. Do you have any relatives in Minnesota?
15:02:41
A. No.

Q. Do you know where Minnesota is located?
A. I never been in Minnesota and I don't know.
Q. Do you know if it's on the east coast,
02:54 west coast --
A. No.
Q. Do you know the date of when you hired your attorney?
A. No, I don't remember the date.
03:20 Q. Do you -- is your memory that it was in 2000, around the time that you saw the newspaper article or the TV?
A. I'm not sure of when.
Q. One of the law firms named here on the
03:43 Exhibit 8 is Robinson Calcagnie & Robinson in Newport Beach, California.
A. Yes.
Q. Is that the first law firm you called?
A. Yes.
03:56 Q. Did you talk to a Carlos Prietto.
A. Yes.
Q. Okay. How about Gale Pearson. Do you know who Gale Pearson is?
A. I think she work with Carlos.
4:11 Q. Okay. Did you ever meet Mrs. Pearson

EXHIBIT A

before December 28th, 2001?
A. No.
Q. How about Mr. Prietto. Did you ever meet with him before -- before December 28th, 2001?
15:04:37 A. No.
Q. Talk to him on the phone?
A. Yes.
Q. How about Mr. David Suggs; do you recall that name.
15:04:50 A. I think it's a friend of our lawyer Robert.
Q. Did you ever meet with Mr. Suggs before December 28th, 2001?
A. No.
15:05:02 He's a friend of my husband.
Q. Now, Ms. Joseph is here and I don't want to know what you and Mrs. Joseph discussed, but did you ever meet with Ms. Joseph before December 28th, 2001?
15:05:19 A. No.
Q. Do you know the date that you signed a retainer agreement?
A. No, I don't remember the date.
Q. Have you ever talked to any other
15:05:40 plaintiffs in the PPA litigation, any other people?

# AUTHORIZATION/RELEASE OF INFORMATION

TO: : Penco, M.D. C/O Intermountain Healthcare

RE: Alicia Quezada (Client)

_______________ (Date of Incident)

You are hereby authorized to release and give my attorneys or my investigator, any information or material they request concerning:

X Medical records, reports, charts, notes, billings, X-rays, films regarding the above patient/client. NOTE: See California Evidence Code, Section 1158 (over)

___ Traffic accident or police investigation reports and/or evidence regarding the above-named client.

DATE: _______________

NEAR: _______________

___ Autopsy and/or Coroner's Investigation Report regarding the above deceased.

___ Employment records regarding the above client.

___ Education records regarding the above client.

___ Social Security records regarding the above client.

___ Federal income tax records regarding the above client.

___ All reports and all other records and/or documents pertaining to:

_______________

I hereby waive any privileges I may have to said information to my attorneys or my investigator ONLY.

Photostatic copies of this authorization will be considered as valid as the original. This authorization is valid until one (1) year from the date of execution thereof.

X Dated: June-13-01

X [signature]
Client, ~~Adult with authority~~ to act for minor, or legal representative of deceased.

Alicia Quezada
ss# 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
DOB 10-30-46

We join our client in thanking you for the requested information.



EXHIBIT B

LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS

A LAW CORPORATION

13938A CEDAR RD ♦ #373 ♦ CLEVELAND, OH 44118
TELEPHONE / 330.425.3957 FACSIMILE / 330.425.3958

JANE E JOSEPH
(216) 921-9314
jejoseph@ix.netcom.com
Admitted in Minnesota and Ohio

RECEIVED
JAN 29 2004

January 25, 2004

Patrick H. O'Neill, Jr.
O'Neill & Murphy, LLP
1050 Degree of Honor Building
325 Cedar Street
St. Paul, Minnesota 55101

***Re: In Re: Phenylpropanolamine (PPA) Products Liability Litigation***
***MDL No. 1407; Alicia Quezada v. McKesson Corporation***
***Case No. 01-CV-2431 (DWF/AJB)***

Dear Mr. O'Neill:

I received your Affidavit on behalf of McKesson that was sent in compliance with Minn. Stat. § 544.41. As we discussed by telephone a couple of weeks ago, that statute is inapplicable to McKesson because, among other things, none of the other companies identified in your affidavit are subject to jurisdiction in Minnesota.

I will be serving an Amended Fact Sheet as soon as it is prepared.

Sincerely,

Jane E. Joseph /aos

Jane E. Joseph

JEJ/aos



EXHIBIT C